UNITED STATES of America, Plaintiff-Appellee,

v.

Steven Paul VALOT, Defendant-Appellant.

Steven Paul VALOT, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

Nos. 79–1771, 79–2712.

United States Court of Appeals, Ninth Circuit.

Submitted May 21, 1980.

Decided Aug. 13, 1980.

Wayne D. Parsons, Greenstein & Parsons, Honolulu, Hawaii, for Steven Paul Valot.

Melvin Soong, Asst. U. S. Atty., Honolulu, Hawaii, for the U. S.

Before MERRILL, DUNIWAY and TANG, Circuit Judges.

MERRILL, Circuit Judge:

Appellant Steven Paul Valot appeals from his conviction for making false statements in obtaining a passport, and from the denial of his habeas corpus petition challenging the revocation of his parole. The issues raised by the two appeals are identical. Valot contends that both his prosecution in the district court and the parole revocation proceedings were barred because he was illegally abducted from Thailand by agents of the United States Drug Enforcement Agency (DEA) in violation of his constitutional rights and of the extradition treaty in effect between the United States and Thailand.

## FACTS

In 1975, Valot violated his parole to the District of Hawaii by traveling to Asia and Nevada; a warrant was issued for his arrest. In 1977, he was arrested in Thailand on a marijuana charge; he was incarcerated until May 4, 1979. On that day, Thai immigration officials brought Valot to the immigration area and then to the transit lounge of the Bangkok airport, and forced him to remain there. Two DEA agents arrived, received Valot from the Thai officials and, over his protest, took him aboard a flight to Honolulu. At the pilot's request, Valot was flown in handcuffs. When he arrived in Honolulu, Valot was informed of his rights and placed under arrest.

On July 3, 1979, Valot was found guilty on stipulated facts of making a false statement in connection with his application for a passport, in violation of 18 U.S.C. § 1542. His parole was revoked on August 6, 1979.

Valot contends that his allegedly illegal abduction from Thailand violated due process, divesting the district court of jurisdiction to try him and the parole board of jurisdiction to revoke his parole. We must reject this contention. The so-called *Ker-Frisbie* doctrine establishes that the means by which a defendant is brought within its jurisdiction does not affect a state's power to bring him to trial. *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). Similarly, "an unbroken line of cases in this circuit [holds] that forcible return to the jurisdiction of the United States constitutes no bar to prosecution once the defendant is found within the United States." *United States v. Lovato*, 520 F.2d 1270, 1271 (9th Cir.) (citations omitted), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975).[1]

Valot relies on the exception to the *Ker-Frisbie* doctrine created by the Second Circuit in *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974).[2] However, a subsequent

---

1. This holding was most recently reaffirmed in *Myers v. Rhay*, 577 F.2d 504, 510 (9th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 459, 58 L.Ed.2d 427 (1978). *See United States v. Cotten*, 471 F.2d 744, 748 (9th Cir.), *cert. denied*, 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 396 (1973); *United States v. Hamilton*, 460 F.2d 1270 (9th Cir. 1972); *Wentz v. United States*, 244 F.2d 172, 176 (9th Cir.) *cert. denied*, 355 U.S. 806, 78 S.Ct. 49, 2 L.Ed.2d 50 (1957).

2. In *Toscanino*, the appellant alleged that he had been kidnapped from his home in Uruguay by agents of the United States and subjected to three weeks of severe physical tortures in Brazil before being brought to the United States for trial. The court held that Toscanino had alleged a violation of due process which, if substantiated, would require that the district court divest itself of jurisdiction.

decision of that circuit establishes that only where the defendant alleges governmental conduct "of the most shocking and outrageous kind" will due process be violated and the court required to divest itself of jurisdiction. *United States ex rel. Lujan v. Gengler,* 510 F.2d 62, 65–66 (2d Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975).[3] Valot has not alleged such conduct.

Valot also argues that his removal from Thailand violated the extradition treaty between the United States and Thailand. He argues that his prosecution was therefore barred by the doctrine of *United States v. Rauscher,* 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886).

*Rauscher* involved formal extradition proceedings. The Court held that Rauscher could not be convicted of a crime other than that for which he was extradited. 119 U.S. at 419–20, 7 S.Ct. at 240. Appellant argues that where an extradition treaty exists, it provides the exclusive means of returning the defendant to the United States. However, *Ker v. Illinois, supra,* decided the same day as *Rauscher,* involved the alleged abduction of a defendant from Peru by an official of the United States Government. Ker argued that the extradition treaty in effect between the United States and Peru had been violated, and that this barred prosecution. The Court held that there was no bar to Ker's prosecution in the Illinois courts.

This court has held that were no demand for extradition is made by the United States and the defendant is deported by the

authorities of the other country which is party to the treaty, no "extradition" has occurred and failure to comply with the extradition treaty does not bar prosecution. *Stevenson v. United States,* 381 F.2d 142, 144 (9th Cir. 1967). *See United States v. Lovato, supra,* 520 F.2d at 1272. Similarly, the Second Circuit has noted that traditionally "even where a treaty provides certain benefits for nationals of a particular state * * * 'individual rights are only derivative through the states.' [ALI, Restatement (Second) of Foreign Relations Law of the United States], § 115, comment e (1965)." *United States ex rel. Lujan v. Gengler, supra,* 510 F.2d at 67 (dictum).[4]

Here, the Thai authorities delivered Valot to the DEA agents at the Bangkok airport. At the very least, it must be said that Thailand initiated, aided and acquiesced in Valot's removal to the United States. We hold that the extradition treaty was not violated and did not constitute a bar to Valot's conviction or to the revocation of his parole.

Affirmed.

---

**3.** The court noted that the "twin pillars" of its holding in *Toscanino* were *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), and dictum in *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1975), "both of which dealt with government conduct of a most shocking and outrageous character." *United States ex rel. Lujan v. Gengler, supra,* 510 F.2d at 65. It emphasized that the governmental conduct alleged by Toscanino "brought his case within the *Rochin* principle." *Id.*

**4.** Further, the court in *Gengler* quoted the comment to Article 16 of the Harvard Research in International Law Draft Extradition Treaty:
  " 'If the State in which the fugitive is found acquiesces or agrees, through its officers or agents, to a surrender accomplished even in the most informal and expeditious way, there is no element of illegality.' 29 Am.J.Int'l Law Supp. 631 (1935)."
510 F.2d at 67.