**UNITED STATES of America**

v.

**Juan Ramon MATTA–BALLESTEROS.**

**No. PCR 86–00511–RV.**

United States District Court,
N.D. Florida,
Pensacola Division.

Aug. 4, 1988.

Samuel A. Alter, Jr., Asst. U.S. Atty., for the U.S.

Martin R. Stolar, New York City, for defendant.

ORDER DENYING MOTION TO
DISMISS INDICTMENT

VINSON, District Judge.

The defendant is charged in an indictment with escape from the custody of the

---

Attorney General of the United States, in violation of Title 18, *United States Code*, Section 751(a). He was arraigned on this charge on June 29, 1988, in Pensacola, Florida. At that time a plea of not guilty was entered on behalf of the defendant by the Court, pursuant to Rule 11(a)(1), Federal Rules of Criminal Procedure.

The defendant has moved to dismiss the indictment, arguing that this Court should decline jurisdiction. (Docs. 15,16) The defendant alleges that he was kidnapped from his home in the Republic of Honduras, abducted to the United States, and tortured en route—all at the direction of agents of the United States. The defendant claims that this conduct violates his constitutional right to due process of law because the United States unlawfully acquired jurisdiction over his person.[1]

The defendant allegedly escaped from the Federal Prison Camp at Eglin Air Force Base in 1971. The indictment charging escape was returned on December 10, 1986, and a warrant was issued for the defendant's arrest on December 17, 1986. The defendant claims Honduran citizenship, and apparently had been living in the Republic of Honduras since early 1986. The Government contends that the defendant is involved in international drug-smuggling.

Documents in the file reflect the following facts. On April 5, 1988, members of the Honduran military seized the defendant at his home in Tegucigalpa, Honduras. The defendant resisted and was forcibly subdued, possibly by means of a stun gun. His captors placed him in a car which was driven to an air base in Honduras. On this drive, he and his captors were accompanied by members of the United States Marshal Service. The defendant was placed in an airplane and flown to the Dominican Republic, and thence to New York City, where he was arrested.

After his arrival in this country, he was transported to the United States Penitentiary at Marion, Illinois, on April 6, 1988. He was given a medical examination and found to be in basically good health with "evidence of recent relatively minor skin trauma." The United States has not received a protest from the government of Honduras concerning the removal of the defendant from that country and his appearance in the United States.

The defendant claims that his "abduction" and "torture" by agents of the United States violated the due process clause, Honduran law, and various international treaties to which the United States and Honduras are signatories. The defendant relies on a series of Second Circuit cases which have indicated that a court should decline jurisdiction over a defendant who has been arrested by United States officials in a manner which shocks the conscience of the court and/or violates international law. For the reasons set out below, I find that this court's jurisdiction over the defendant is proper.

The law regarding a court's jurisdiction over a defendant forcibly abducted from another country has been settled for over a hundred years. In *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886), the Supreme Court of the United States considered whether an allegedly unlawful arrest could form the basis for an attack on the jurisdiction of the court in which the defendant had been convicted. The defendant Ker had been kidnapped from his home in Peru by an agent of the United States, returned to the State of Illinois, tried, and convicted. In considering the appeal of his conviction, the Supreme Court held that the forcible abduction was not a sufficient reason to deny a court jurisdiction over the person of the defendant, and that the due process clause was not violated by the actions of the United States agent. 119 U.S. at 444, 7 S.Ct. at 229. "[F]or mere irregularities in the manner in which [a defendant] may be brought into the custody of the law, we do not think he is entitled to say that he should not be tried at all for the

---

1. The defendant has raised the same ground in a petition for a writ of habeas corpus filed in the Southern District of Illinois, challenging his present confinement at the penitentiary in Marion, Illinois.

crime with which he is charged in a regular indictment." *Id.* at 440, 7 S.Ct. at 227.

The Court rejected the argument that treaties between the United States and Peru concerning formal extradition proceedings granted the defendant rights in this situation. It pointed out that the defendant could sue his abductor for damages, and, if Peru so wished, it could demand extradition of the abductor for trial on kidnapping charges. *Id.* at 444, 7 S.Ct. at 229. Thus, the forcible abduction did not vitiate the Illinois state court's jurisdiction over the defendant.

The Supreme Court reaffirmed the application of *Ker v. Illinois* in its 1952 decision of *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952) (footnote omitted):

> This Court has never departed from the rule announced in *Ker v. Illinois*, 119 U.S. 436, 444, [7 S.Ct. 225, 229, 30 L.Ed. 421] that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a "forcible abduction." No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

In several more recent decisions, the Supreme Court has confirmed the "*Ker–Frisbie* doctrine" by application of the rule that the person of a defendant is not suppressible "fruit" of unlawful police conduct in his arrest or detention. *See Immigration & Naturalization Service v. Lopez–Mendoza*, 468 U.S. 1032, 1039–40, 104 S.Ct. 3479, 3483–84, 82 L.Ed.2d 778

(1984); *United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980); *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975). Thus, the allegation of an unlawful arrest, without more, is not a sufficient basis for this Court to decline jurisdiction over the defendant.

The defendant relies on *United States v. Toscanino*, 500 F.2d 267 (2d Cir.1974), as authority for the proposition that a court should decline jurisdiction over a defendant who shows that he was unlawfully arrested by conduct of police officials which shocks the conscience and undermines the basic protection of constitutional due process. In *Toscanino*, the Second Circuit examined the *Ker–Frisbie* doctrine in light of the Supreme Court's expansion of due process protections in cases such as *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), and *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). The court determined that such decisions indicated that due process of law protects "against pretrial illegality by denying to the government the fruits of its exploitation of any deliberate and unnecessary lawlessness on its part." 500 F.2d at 275.

The defendant in *Toscanino* alleged that he had been abducted from his home in Uruguay, and then interrogated and tortured for a period of almost three weeks at the direction and with the participation of United States agents. The district court refused to vacate his conviction on these allegations, and the defendant appealed. The Second Circuit held that due process requires "a court to divest itself of jurisdiction over the person of a defendant where it has been acquired as the result of the government's deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights." [2] *Id.* at 275.

The *Toscanino* court also held that the defendant may have been seized in violation of various international treaties. Distinguishing *Ker v. Illinois*, the court rea-

---

**2.** On remand, the district court declined to hold an evidentiary hearing on the defendant's claim, finding that the allegations did not indicate participation by United States officials. *United States v. Toscanino*, 398 F.Supp. 916 (E.D.N.Y. 1975).

soned that where a treaty limited the authority of the United States government to act in the manner through which it acquired the person of the defendant, then a court should decline jurisdiction. To try the defendant in these circumstances would nullify the effect and purpose of the treaty. *Id.* at 277–79.

One year later, the Second Circuit narrowed its holding in *Toscanino. See United States ex rel. Lujan v. Gengler,* 510 F.2d 62 (2d Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975). The court recognized that *Toscanino* represented only a narrow exception to the *Ker–Frisbie* doctrine in instances of "shocking government conduct." Furthermore, it ruled that the defendant could not maintain that his arrest violated an international treaty unless there had been a protest concerning his abduction from the government which was a party to the treaty.[3]

■ The Second Circuit has also indicated that jurisdiction over a fugitive from justice should be treated differently from cases in which the jurisdiction is initially obtained by illegal means. *United States v. Reed,* 639 F.2d 896, 902 n. 2 (2d Cir. 1981). Here, Matta–Ballesteros is charged with escape from a United States penal institution. If he is a fugitive escapee from legal custody, then he is subject to recapture and return to prison without further judicial proceedings. Jurisdiction over his person with respect to the charge of escape would appear to be a direct extension of his underlying obligation to complete serving his sentence from which he escaped. Therefore, I agree with the Second Circuit that there are marked differences in the due process aspects of jurisdiction when it involves a recaptured fugitive. It is not necessary for me to analyze and attempt to apply these differences here, because I can readily resolve the jurisdiction issue on other grounds.

■ I conclude that the *Toscanino* rationale should not apply under the facts of this case. First, as previously noted, the Supreme Court has implicitly rejected *Toscanino* in decisions subsequent to 1974 which have reaffirmed the *Ker–Frisbie* doctrine. For example, the Court stated in *United States v. Crews, supra,* 445 U.S. at 474, 100 S.Ct. at 1251, that a defendant "is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." The continuing validity of *Toscanino* is highly questionable in light of the intervening decisions of the Supreme Court in *Gerstein, Crews,* and *Lopez–Mendoza. See United States v. Darby,* 744 F.2d 1508, 1531 (11th Cir.1984), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2322, 85 L.Ed.2d 841 (1985).

Second, both the Eleventh Circuit and the former Fifth Circuit have adhered to the *Ker–Frisbie* doctrine and have rejected the reasoning of *Toscanino. See United States v. Darby, supra,* 744 F.2d at 1530–31; *United States v. Winter,* 509 F.2d 975 (5th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *United States v. Herrera,* 504 F.2d 859 (5th Cir. 1974). It is clearly not the law of this circuit.

Third, even if *Toscanino* represented the law, the facts alleged in this case by the defendant do not establish the kind of cruel, barbaric, and outrageous conduct by United States officials needed for the application of the substantive due process prong of the rule. *See United States v. Darby, supra,* 744 F.2d at 1530–31; *United States v. Herrera, supra,* 504 F.2d at 859; *United States v. Fielding,* 645 F.2d 719, 723–24 (9th Cir.1981); *United States v. Valot,* 625 F.2d 308 (9th Cir.1980).

Fourth, no protest has been lodged by the Republic of Honduras concerning the

---

**3.** Two of the three judges on the *Lujan* panel were also on the *Toscanino* panel, which further seems to indicate that the Second Circuit has significantly limited the application of *Toscanino. See also United States v. Lira,* 515 F.2d 68

(2d Cir.1975), *cert. denied* 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975) (involving claim by Lira that he had been tortured in Chile prior to being sent to the United States to stand trial).

defendant's "abduction," and so he cannot rely on a violation of international treaties, the second prong of the *Toscanino* rule. *See United States v. Rosenthal,* 793 F.2d 1214, 1232–33 (11th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987); *United States v. Reed, supra,* 639 F.2d at 902. Indeed, it appears that authorities of Honduras either seized and removed the defendant from their country or aided and acquiesced in his removal. *See United States v. Valot, supra,* 625 F.2d at 308.

Accordingly, the defendant's motion to dismiss the indictment is hereby DENIED.

DONE AND ORDERED.