Juan Ramon
MATTA–BALLESTEROS, Petitioner,

v.

Gary L. HENMAN, Warden, United
States Penitentiary at Marion,
Illinois, Respondent.

No. 88–2767.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1989.

Decided Feb. 21, 1990.

As Amended Feb. 22, 1990.

Martin R. Stolar, New York City, Michael D. Abzug, Los Angeles, Cal., Adolfo Z. Aguila, Miami, Fla., J. William Lucco, Lucco & Brown, Edwardsville, Ill., for petitioner.

Ralph M. Friederich, Asst. U.S. Atty., East St. Louis, Ill., Catherine M. Volz, Bradley D. Simon, Dept. of Justice, Narcotic & Dangerous Drug Section, Washington, D.C., for respondent.

Before CUMMINGS and FLAUM, Circuit Judges, and WILL, Senior District Judge.*

FLAUM, Circuit Judge.

Juan Ramon Matta–Ballesteros ("Matta"), petitions this Court by writ of habeas corpus claiming that the United States illegally kidnapped him from his home in Honduras and tortured him before transporting him to the United States to face trial on pending criminal charges. Based on these allegations, Matta claims that the United States violated the Honduran Constitution, international law, and the due process clause of the United States Constitution and as a result, the United States is without personal jurisdiction over him. The district court denied his petition without a hearing on the basis that the facts, as alleged, did not entitle him to the requested relief. Matta petitions us to remand the case to the district court for an evidentiary hearing. For the reasons set forth below, we affirm.

## I. FACTS

In 1971, Matta escaped from the United States Prison Camp at Eglin Air Force Base in Florida and fled to Honduras. He is a Honduran citizen and because Honduras does not extradite its own citizens, he believed that he had found a safe haven from the reach of United States law enforcement officials. While he was in the Honduras, he allegedly became heavily involved in the narcotics trade and now faces criminal charges in the federal district courts of Arizona, Central California, and Southern California. At the time he filed the writ, he was also under indictment in the Northern District of Florida for escape pursuant to 18 U.S.C. § 751(a). He has

since been convicted of that crime and sentenced to three years imprisonment.

At about 6:00 a.m. on the morning of April 5, 1988, Matta, accompanied by his bodyguards, arrived at his home in Tegucigalpa, Honduras.[1] Upon his arrival, Matta was surrounded by armed members of the Honduran Special Troops or "Cobras," who were accompanied by at least four United States Marshals. He was arrested and handcuffed, allegedly at the direction of the United States Marshals. A black hood was placed over his head and he was pushed onto the floor of a car driven by the United States Marshals.

A United States Marshal immediately drove him to a United States Air Force base approximately an hour-and-a-half away. During the ride, Matta claims that he was severely beaten and burned with a "stun gun"[2] at the direction of the United States Marshals. Once he arrived at the airport, Matta was flown to the United States. He claims that during this flight, he was once again beaten and shocked about the body, including on his testicles and feet, again by United States Marshals.

Upon his arrival in the United States, Matta was immediately transferred to Marion Penitentiary. Approximately 24 hours had passed from the time of his apprehension. Matta was subsequently examined by a physician who found abrasions on his head, face, scalp, neck, arms, feet, and penis, as well as blistering on his back. According to the examining physician, these injuries were consistent with those which could have been caused by a stun gun.

Based on these allegations, Matta filed a writ of habeas corpus in the Southern District of Illinois claiming that the United States had acted in violation of the Honduran Constitution, international law, and the

---

* The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. Since Matta was denied discovery and an evidentiary hearing, we consider the facts alleged in the pleadings and affidavits in the light most favorable to him in determining whether to grant the writ.

2. The stun gun or "Taser" is a non-lethal device commonly used to subdue individuals resisting arrest. It sends an electric pulse through the body of the victim causing immobilization, disorientation, loss of balance, and weakness. *See Thomas v. City of Zion,* 665 F.Supp. 642, 644 (N.D.Ill.1987). It leaves few, if any, marks on the body of the victim. Aff. of D. Donovan.

United States Constitution. He demanded his release back to Honduras on the basis the United States was without jurisdiction to prosecute him as a result of the alleged due process violations.

At the time he filed the writ, Matta faced indictment in the Northern District of Florida for escape from the United States Prison Camp at Eglin Air Force Base in 1971, along with indictments on various narcotics charges in the central and southern districts of California, and the district of Arizona. After filing the writ, he sought a preliminary injunction to prevent the government from transferring him from Marion to face prosecution in these districts. *Matta–Ballesteros ex rel. Stolar v. Henman,* 697 F.Supp. 1036 (S.D.Ill.1988). Matta did not face charges anywhere within the jurisdiction of the district court where he brought his petition. He was simply being held in Marion Penitentiary pending transfer to jurisdictions where he did face charges. The preliminary injunction was denied by the district court on the basis that Matta failed to establish that he had no adequate remedy at law and failed to show irreparable harm. *Id.*

After denying the preliminary injunction, the district court ordered an expanded record from the parties, including affidavits from the petitioner and any occurrence witnesses. In addition to other documents, Matta filed affidavits from his bodyguards who were with him at the time of his arrest confirming his allegations. The government filed affidavits by various United States Marshals denying most of Matta's allegations, especially those concerning torture. The United States contended that the Honduran government, and not the

United States, arrested Matta and was responsible for any mistreatment. Based on this expanded record, the district court found that Matta's claims failed as a matter of law, holding that even if the facts were as Matta alleged, he was not entitled to the relief he sought. The court, therefore, denied Matta's request for discovery and an evidentiary hearing, ruling on the pleadings and affidavits alone, much in the manner of a summary judgment. *Matta–Ballesteros ex rel. Stolar v. Henman,* 697 F.Supp. 1040 (S.D.Ill.1988). Since the district court's denial of the writ, Matta has been transferred to a prison in Florida, arraigned, tried, and convicted of escape from federal custody. 18 U.S.C. § 751(a).[3]

## II. ANALYSIS

The district court's decision not to grant an evidentiary hearing was based on Rule 8(a) of the Rules Governing Section 2254 Cases[4] (the "Rules") which states that after the transcript and record of the state court proceedings are filed, the trial judge may determine if an evidentiary hearing is needed, and if not, shall "make such disposition of the petition as justice shall require." Rule 8(a) of the Rules; 28 U.S.C. § 2554. The district court held that it could consider the facts much as in a summary judgment motion, reading any facts in dispute in favor of the non-movant, in this case Matta, and then applying the law to those facts.

Matta's only claim on appeal is based on this denial: he claims he was entitled to an evidentiary hearing by the district court. To advance this claim, Matta presents two

3. Prior to trial, the district court in Florida heard similar arguments to those presented here and decided, in a published opinion, that the United States had jurisdiction over Matta. *United States v. Matta–Ballesteros,* 700 F.Supp. 528 (N.D.Fla.1988). This decision has apparently been appealed to the Eleventh Circuit. Counsel for Matta told us at oral argument that Matta has also raised these claims before a district court sitting in the Ninth Circuit. That court apparently held that Matta was collaterally estopped from bringing those claims because they had been fully and fairly litigated by the district court in the case at hand.

4. This suit was brought under 28 U.S.C. § 2254 which provides relief from state custody. Technically, this suit should have been brought under 28 U.S.C. § 2255, as Matta was asking for relief from federal custody. Sections 2254 and 2255, however, are materially the same for the purposes of our analysis, except as indicated in note 8, and therefore, for the purposes of this case, we will not distinguish between these statutes. *See United States v. Hayman,* 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952), *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). *See also* § 2255 Rules.

arguments. First, he asserts that he was entitled to an evidentiary hearing because of the unique posture of his case, i.e., there was no trial court record upon which the denial of the writ could be based. Second, he maintains that the facts, as he alleges them, entitle him to relief as a matter of law, and therefore, there are material issues of fact that must be determined through an evidentiary hearing. We consider each of these in turn. Both claims present questions of law, so we review the district court's decision *de novo. See Christianson v. Colt. Indust. Operating Corp.*, 870 F.2d 1292, 1299 (7th Cir.1989).

## A. Denial of an Evidentiary Hearing

■ Matta's first contention is, in essence, that where there has been no prior trial, a writ of habeas corpus may not be denied without a hearing.[5] Common sense, however, dictates that if the facts as alleged by the applicant do not entitle him to relief, a hearing at which the applicant may prove those facts is useless. This reasoning, which was relied on by the district court, is reflected by 28 U.S.C. § 2254(d) and by the decisions of both this Court and the Supreme Court.

The Seventh Circuit has held that "an evidentiary hearing is not necessary when the facts essential to consideration of the constitutional issue are already before the court." *Jeter v. Keohane*, 739 F.2d 257 n. 1 (7th Cir.1984); *see also Bergenthal v. Cady*, 466 F.2d 635, 648 (7th Cir.1972), *cert. denied*, 409 U.S. 1109, 93 S.Ct. 913, 34 L.Ed.2d 690 (1973). Our holding in *Jeter* is based on *Townsend v. Sain*, 372 U.S. 293, 319, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963) and its codification at 28 U.S.C. § 2254, both of which detail the situations where an evidentiary hearing is mandatory. Each situation listed by *Townsend* assumes that material facts are in dispute. Two of the listed situations are relevant for our purposes. First, the Court stated that a hearing is mandatory where "the merits of the factual dispute were not resolved in the state court hearing." 372 U.S. at 313, 83 S.Ct. at 757. The merits of a dispute, however, only concern material facts. Second, the Court required a hearing where "the *material* facts were not adequately developed...." *Id.* at 313, 83 S.Ct. at 757. Again, material facts must be at issue. Section 2254 echoes the requirements of *Townsend*.[6] Section 2254(d)(3), the provision most applicable to this case, mandates a hearing when "*material* facts were not adequately developed...." 28 U.S.C. § 2254(d)(3). Similarly, section 2254(d)(1) requires a hearing when the merits of the factual dispute were not resolved earlier. Once again, the "merits" of a dispute only concern material facts. Neither *Townsend*

---

**5.** To advance this argument he observes that habeas petitions are normally brought after sentencing, not before trial. Rule 8(a), upon which the district court relied, assumes that this is the case. It states that "*after ...* the transcript and record of state court proceedings is filed" the judge shall decide if an evidentiary hearing is necessary. Rule 8(a) of the Rules Governing Habeas Corpus. Matta argues, the trial transcript is vital to the decision to grant the writ. *Townsend v. Sain*, 372 U.S. 293, 319, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963), ("[t]he trial record is indispensable to determining whether the habeas application received a full and fair ... evidentiary hearing"). Matta concludes from this, that because he never had an evidentiary hearing at trial and because it is indispensable to the decision to grant the writ, he deserves a hearing now. That is, Matta argues, a habeas petition deserves some kind of evidentiary hearing, whether it is during the underlying criminal trial or during the habeas hearing, and as he has not yet had a chance to present evidence, he deserves one now.

**6.** Section 2254(d) requires an evidentiary hearing when the applicant shows any of the following circumstances:

"(1) that the merits of the factual dispute were not resolved in the State court hearing;
"(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
"(3) that the material facts were not adequately developed at the State court hearing;
"(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
"(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
"(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
"(7) that the applicant was otherwise denied due process of law in the State court proceeding."
28 U.S.C. § 2254(d).

nor § 2254 require a hearing where no material facts are in dispute.

■ Moreover, under the Rules Governing Habeas Corpus, "the district judge ... may employ a variety of measures in an effort to avoid the need for an evidentiary hearing." *Blackledge v. Allison*, 431 U.S. 63, 81, 97 S.Ct. 1621, 1633, 52 L.Ed.2d 136 (1977). For instance, rule 6(a) requires good cause for discovery in habeas proceedings. Good cause cannot exist where the facts alleged do not provide a basis for relief. Rule 7 which governs expansion of the record, is a method specifically designed to avoid evidentiary hearings. When enacting the rule, the advisory committee noted that "the purpose [of Rule 7] is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing." Advisory Committee Note to Rule 7 of the Rules Governing Habeas Corpus. Moreover, Rule 8 mandates that when a hearing is not required by section 2254, the trial judge shall "make such disposition of the petitions as justice shall require." Finally, Rule 11 of the Rules Governing Habeas Corpus allows courts to follow the Federal Rules of Civil Procedure during habeas proceedings where they are not inconsistent with the habeas rules. Here, the district court followed the procedure for summary judgment and in doing so was not acting inconsistently with the habeas rules governing when a hearing is necessary. Each of these rules directs district judges to expedite the process, hearing evidence only when necessary. Where there are no material facts at issue, it is consistent with these rules to decide the case without a hearing. We conclude in light of this analysis that Matta was entitled to an evidentiary hearing only where material facts are in dispute, notwithstanding the unique posture of his case.

### B. The Applicable Law

If Matta's allegations do not entitle him to relief, then we may rule as a matter of law, taking his allegations to be true. We, therefore, examine the applicable law to determine if any of Matta's claims entitle him to relief. Matta makes two claims. First, Matta asserts that his arrest violates international law, namely the Honduran Constitution and two extradition treaties to which the United States and Honduras were parties. Second, Matta contends his abduction violated the fifth amendment due process clause. We consider each in turn.

### 1. Violations of International Law

■ It is well established that individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereigns involved. "[E]ven where a treaty provides certain benefits for nationals of a particular state—such as fishing rights—it is traditionally held that 'any rights arising from such provisions are, under international law, those of states and ... individual rights are only derivative through the states.'" *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 67 (2d Cir.), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975) (quoting *Restatement (Second) of the Foreign Relations Law of the United States* § 115, comment e (1965)). Treaties are "designed to protect the sovereign interests of nations, and it is up to the offended nations to determine whether a violation of sovereign interests occurred and requires redress." *United States v. Zabaneh*, 837 F.2d 1249, 1261 (5th Cir.1988). *See also United States v. Cadena*, 585 F.2d 1252, 1261 (5th Cir.1979); *United States v. Davis*, 767 F.2d 1025, 1030 (2nd Cir.1985); *United States v. Cordero*, 668 F.2d 32, 37–38 (1st Cir.1981); *United States v. Valot*, 625 F.2d 308, 310 (9th Cir.1980).

■ Matta makes no claim that the government of Honduras has made an official protest. Indeed, Matta admits that the Honduran military cooperated in his arrest. Instead, he asserts that the protests before the American Embassy in Honduras and a bill introduced in the Honduran legislature (which was never voted on) show that the people of Honduras objected to the abduction. The United States, however, recognizes the Honduran government as the offi-

cial government of the Republic of Honduras. Were we to conclude that Honduras protested Matta's arrest in the absence of word from the Honduran government, we would be denying the sovereignty of the Republic of Honduras. *See Societe Nationale v. United States Dist. Court*, 482 U.S. 522, 107 S.Ct. 2542, 2562, 96 L.Ed.2d 461 (1987) ("each state has a monopoly of governmental power within its borders"). Without an official protest, we cannot conclude that Honduras has objected to Matta's arrest. Therefore Matta's claims of violations of international law do not entitle him to relief.

### 2. Violation of Matta's Fourth and Fifth Amendment Rights

■ For the past 100 years, the Supreme Court has consistently held that the manner in which a defendant is brought to trial does not affect the ability of the government to try him. The *Ker–Frisbie* doctrine, as this rule has come to be known, states that "the power of a court to try a person for a crime is not impaired by the fact that he has been brought within the court's jurisdiction by reason of a 'forcible abduction' ". *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952) (citing *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886)). While notions of due process have been expanded since *Frisbie, see Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court has consistently reaffirmed the *Ker–Frisbie* doctrine. *See e.g. I.N.S. v. Lopez–Mendoza*, 468 U.S. 1032, 1039–40, 104 S.Ct. 3479, 3483–84, 82 L.Ed.2d 778 (1984); *United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980); *Stone v. Powell*, 428 U.S. 465, 485, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In *United States v. Crews*, the Court recognized that "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction.... Respondent himself is not a suppressible 'fruit' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt ..." 445 U.S. at 474, 100 S.Ct. at 1251. And in *Gerstein v. Pugh*, the Court held that "[n]or do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction." 420 U.S. at 119, 95 S.Ct. at 865. It is, therefore, inadequate for Matta to allege, without more, that the arrest was illegal.

To create a colorable argument in the face of this rule, Matta relies on an "exception" to the *Ker-Frisbie* doctrine carved out by the Second Circuit in *United States v. Toscanino*, 500 F.2d 267 (2d Cir.1974). Prior to trial for narcotics offences, Toscanino challenged the ability of the district court to try him, contending his presence had been illegally obtained through torture and kidnapping by the United States. Toscanino offered to prove in support of his motion that he and his pregnant wife had been lured from his home in Montevideo, Uruguay to a deserted area. There, Toscanino claimed, he was abducted by being knocked unconscious with a gun, placed into a car, bound and blindfolded and driven across the border to Brasilia where he was incessantly tortured and interrogated for seventeen days. After this ordeal Toscanino was drugged and placed on an American commercial flight. Once he arrived in the United States, he was taken into custody by waiting United States law enforcement officials.

Faced with these allegations, the Second Circuit held that "we view due process as now requiring a court to divest itself of jurisdiction over the person of a defendant where it has been acquired as the result of the government's deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights." 500 F.2d at 275. In so holding, that court relied on *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), where the Supreme Court applied the due process clause, to the "the whole course of the proceedings in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peo-

ples even toward those charged with the most heinous offences." *Id.* at 169, 72 S.Ct. at 208 (citations omitted). *See also United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

In *United States ex rel. Lujan v. Gengler*, 510 F.2d 62 (2d Cir.), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975), the Second Circuit clarified and narrowed *Toscanino*. In this case, the court was faced once again with an international abduction but there was no contention of torture or terror. The Second Circuit said that *Toscanino* only applied where the defendant could prove "torture, brutality, and similar outrageous conduct," and therefore, there was no violation of the due process clause. *Id.* at 65. The conduct must "shock the conscience" before a violation can occur. *Id.,* (quoting *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)). Matta asserts that he falls under *Toscanino* and *Gengler*.

The Seventh Circuit has never squarely faced the *Toscanino* exception to the *Ker–Frisbie* doctrine. In *United States v. Marzano*, 537 F.2d 257 (7th Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977), this Court expressly refrained from deciding whether to follow *Toscanino* and we have not faced the issue since. Several other circuits, however, have considered *Toscanino*. While the Ninth Circuit has adopted this exception, *United States v. Valot*, 625 F.2d 308, 309 (9th Cir.1980), the Fifth and the Eleventh Circuits have rejected it. *United States v. Darby*, 744 F.2d 1508, 1531 (11th Cir.1984), *cert. denied*, 471 U.S. 1100, 105 S.Ct. 2322, 2323, 85 L.Ed.2d 841 (1985); *United States v. Winter*, 509 F.2d 975, 986–88 (5th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). In addition, no court, including the *Toscanino* court which remanded the case for factual findings, has ever found conduct that rises to the level necessary to require the United States to divest itself of jurisdiction. The decision to follow *Toscanino* is now squarely before this Court.

We initially note that *Toscanino* is of ambiguous constitutional origins. On its face, *Toscanino* purports to rely on the due process clause (of either the fifth amendment or the fourteenth amendment). Yet the Second Circuit relied for support on *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), a fourth amendment exclusionary rule case.

■ The due process clause has been held to "protect[ ] a pre-trial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, —— U.S. ——, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–39, 99 S.Ct. 1861, 1871–74, 60 L.Ed.2d 447 (1979)). Under this holding, if Matta could prove that he was punished as a pre-trial detainee, then he might be entitled to some relief under the due process clause (although not necessarily the divestiture of jurisdiction by the United States). Matta, however, does not allege punishment during his pre-trial detention at Marion prison. Instead, he claims that he was tortured during the course of his arrest.[7]

■ Claims such as Matta's involving constitutional violations during arrest, however, are properly analyzed under the fourth amendment rather than the fifth amendment. While examining a claim of use of excessive force during arrest, the Supreme Court recently held that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [claims of excessive force]." *Graham*, 109 S.Ct. at 1871. *See also United States v. Miller*, 891 F.2d 1265 (7th Cir.1989) (Easterbrook, J. concurring).

*Graham*, however, concerned a § 1983 action for use of excessive force while Mat-

7. The concurrence argues that the torture took place after the arrest. If the concurrence is correct that the arrest took place in Honduras and the ensuing flight to the United States was part of pretrial detention, then the due process clause would clearly be implicated. *Bell v.*

*Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The remedy, however, for violations of the due process clause during pre-trial detention is not the divestiture of jurisdiction, but rather an injunction or money damages. *See id.*

ta has brought a habeas petition. Nevertheless, underlying Matta's petition is the use of excessive force by the police and, therefore, a similar analysis is appropriate. The fourth amendment covers claims for excessive force such as Matta's under a reasonableness standard by balancing "the nature and quality of the intrusion on the individual's fourth amendment interests" against the governmental interests at stake. *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). And "the 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out." *Graham,* 109 S.Ct. at 1871 (emphasis in original). Under this reasonableness standard, the fourth amendment provides an explicit textual basis for claims such as Matta's of unconstitutional conduct during arrest.

■ Matta's requested relief, however, is not supported by the fourth amendment. His claim is essentially an exclusionary rule for the body of the defendant. Exclusionary rules are simply means of enforcing the provisions of the constitution.[8] *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976); *United States v. Leon,* 468 U.S. 897, 911–22, 104 S.Ct. 3405, 3414–20, 82 L.Ed.2d 677 (1984). "The primary justification for the exclusionary rule then is the deterrence of police conduct that violates Fourth Amendment rights." *Stone,* 428 U.S. at 486, 96 S.Ct. at 3048; *see also Leon,* 468 U.S. at 911–22, 104 S.Ct. at 3414–20. In addition, the imperative of maintaining judicial integrity may play some role in the exclusionary rule calculus. *See United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975). *But see Stone,* 428 U.S. at 485, 96 S.Ct. at 3048. We believe that neither rationale supports the application of the exclusionary rule to this case.

There are several reasons why the deterrence rationale fails to support the application of the exclusionary rule to the present case. First, the Supreme Court has explicitly rejected the use of the deterrence rationale in this situation. In *United States v. Crews,* the Court held:

> The exclusionary principle of *Wong Sun* and *Silverthorne Lumber Co.* [*v. U.S.,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920)] delimits what proof the Government may offer against the accused at trial, closing the courtroom door to evidence secured by official lawlessness. Respondent is not himself a suppressible "fruit," and the illegality of his detention cannot deprive the Government of the opportunity to prove guilt through the introduction of evidence wholly untainted by the police misconduct.

445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980). This decision is based on the Court's opinion that the deterrent effect of excluding the body of the defendant is not sufficient to warrant this extreme measure: "[s]o drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book." *Crews,* 445 U.S. at 474 n. 20, 100 S.Ct. at 1251 n. 20 (quoting *United States v. Blue,* 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966)).

In addition, there are other means of deterring police misconduct in cases such as this that are less intrusive than a constitutionally based exclusionary rule. For example, Matta could file a *Bivens* action alleging violation of his due process rights. Alternatively he could ask that the case be dismissed for prosecutorial misconduct. (We take no position on the merits of these claims.) Moreover, complaints from foreign nations of violations of international law as well as the loss of international standing provide an additional deterrent effect. We believe, that where the interference with the judicial process is so severe and where other means of deterrence are already in place, the additional deterrence created by the exclusionary rule is not enough to justify its use.

---

8. This is the one area where the district court's use of § 2254 would result in a different analysis because *Stone* precludes exclusionary rule claims under § 2254 but left open the question under § 2255. Reasons such as comity may dictate such a difference, and therefore, it is important to petition for habeas under the correct statute.

In *Stone*, the Court considered the judicial integrity rationale for the exclusionary rule. The Court stated that the imperative of judicial integrity plays a limited role, holding that judicial integrity itself is not enough to mandate a retreat "from the proposition that judicial proceedings need not abate when the defendant's person is unconstitutionally seized." 428 U.S. at 485, 96 S.Ct. at 3048. In addition, reliance on the judicial integrity rationale has become suspect in recent years. In *Leon*, the Court held that the "the question of whether the use of illegally obtained evidence in judicial proceedings represents judicial participation in a Fourth Amendment violation and offends the integrity of the courts is essentially the same as the inquiry into whether exclusion would serve a deterrence purpose...." 468 U.S. at 921 n. 21, 104 S.Ct. at 3419 n. 21 (citations omitted). Therefore, analysis of the judicial integrity rationale separate from the deterrence rationale may not be warranted. Moreover, judicial integrity can be protected through motions for prosecutorial misconduct.

Finally, the Supreme Court has twice more (in addition to *Stone* and *Crews*) reaffirmed *Ker-Frisbie* since *Toscanino*, although it is unclear on what grounds. In *Lopez–Mendoza*, the Court reaffirmed that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." 468 U.S. at 1039–40, 104 S.Ct. at 3483–84. And in *Gerstein v. Pugh* the Court stated that "[n]or do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction." 420 U.S. at 119, 95 S.Ct. at 865.

While we do not condone government misconduct such as Matta alleges, we cannot create an exclusionary rule for the person of the defendant in light of our analysis and in the face of repeated re-affirmation by the Supreme Court that no such rule exists. The Court has rejected both the deterrence and the judicial integrity rationales for the exclusionary rule applied to this context. We therefore conclude that *Toscanino*, at least as far as it creates an exclusionary rule, no longer retains vitality and therefore decline to adopt it as the law of this circuit.[9] If Matta wishes to object to his mistreatment, he must do so on other grounds. Matta has failed to state a claim upon which relief can be granted. Accordingly, we affirm the district court.[10]

WILL, Senior District Judge, concurring.

I concur in the result reached by the majority. I would not, however, have taken the same road to get there. There is no need to disparage or reject *Toscanino* in this case, which is clearly distinguishable on its facts. First, the torture Toscanino alleged was grossly more egregious than what Matta alleges, although both shock the conscience. Second, and perhaps more importantly, release as contemplated in *Toscanino* is not an appropriate remedy here. Matta was a fugitive and release would mean effectively commuting his earlier, lawfully imposed sentence, an unwarranted result. That was not the case in *Toscanino*.

The last time *Toscanino* was raised in this circuit we refrained from deciding whether to follow it, on the basis that the case in front of us was distinguishable. *United States v. Marzano*, 537 F.2d 257 (7th Cir.1976). I would have taken that

**9.** As we have rejected *Toscanino* on exclusionary rule grounds, we take no position on whether the government's conduct, as alleged, violated the fourth amendment. In addition, we do not reach the "outrageous government conduct" defense of *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Matta does not base his argument on this defense and even if he had, we recently noted that the continued vitality of this doctrine is questionable given the holding of a three-justice plurality in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). *United States v. D'Antoni*, 874 F.2d 1214 (7th Cir.1989). To the best of our knowledge, there are no cases that apply the outrageous government conduct defense to allegations of torture such as those in the present case.

**10.** We take no position on the collateral estoppel effects of this decision except to note that Matta has failed to state a claim upon which relief can be granted.

route here too, leaving open the question whether or not to follow it until we are presented with a case with comparable facts.

It is conceivable to me that, in the words of Justice Rehnquist, there may be cases "in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973) (entrapment case) (citing *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (not an entrapment case)). *See also Olmstead v. United States*, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). This court has previously expressed skepticism about whether the government would ever, by outrageous conduct, surrender its authority to prosecute as a matter of due process. *E.g., United States v. D'Antoni*, 874 F.2d 1214, 1219 (7th Cir.1989); *United States v. Bontkowski*, 865 F.2d 129, 131–32 (7th Cir.1989); *United States v. Curtis Miller*, 891 F.2d 1265, 1271 (7th Cir.1989) (Easterbrook, J., concurring). But we have never foreclosed that possibility—for entrapment cases, excessive force cases, or any other kind of case—and I see no reason to reject *Toscanino* and thereby foreclose it for future cases by our decision today.

I have no doubt that judges will disagree about the level of outrageousness, if any, that it should take to bar judicial process. But the simple fact of disagreement does not make the determination of what "outrageous" conduct would consist of somehow judicially more unmanageable or subjective than, for instance, the balancing that goes into distinguishing a reasonable from an unreasonable search or even guilt from innocence, and I would reserve the possibility that some day we may, given the facts, want the option of attempting that determination.

Finally, the majority states that any excessive force used was applied "during the course of" Matta's arrest and assumes the arrest did not occur until Matta arrived at the U.S. border. An arrest occurs when a reasonable person, in view of all the cir-

cumstances, would believe himself to be under arrest. *United States v. Boden*, 854 F.2d 983, 991–93 (7th Cir.1988); *United States v. Robertson–Steeprow*, 833 F.2d 777, 780 (9th Cir.1987); *United States v. Borys*, 766 F.2d 304, 308–09 (7th Cir.1985). Matta was therefore arrested long before he reached American soil. By that time, he had already been shoved into a van, with a hood over his head, and had been in the company of U.S. Marshals for twenty-four hours. I do not imagine that he was either traveling voluntarily or felt free to leave the marshals during those twenty-four hours. Accordingly, the excessive force here would have been applied after Matta's arrest and during his pretrial detention before he reached Marion, removing this case from the reach of *Graham v. Connor*. *Graham* specifically reserves the question whether a fourth amendment analysis applies "beyond the point at which arrest ends and pretrial detention begins." 109 S.Ct. at 1871 n. 10. That does not change the result to be reached in this case, however. Release remains an inappropriate remedy on the facts before us.