28 F.3d 1217
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alfredo MUNOZ-SOLARTE, and William Quiceno De La Pava, a/k/a
"Peewee", Defendants-Appellants.
 Nos. 93-2723, 93-3811.
 United States Court of Appeals, Seventh Circuit.
 Argued May 12, 1994.
Decided July 18, 1994.
 
 Before BAUER, COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Defendant-appellants William Quiceno De La Pava and Alfredo Munoz-Solarte pleaded guilty to conspiring to possess and distribute cocaine in violation of 21 U.S.C. Sec. 846. Defendants pleaded guilty pursuant to a plea agreement in which they reserved their right to appeal the district court's order denying their pre-trial challenges to the lawfulness of their extraditions from Panama to the United States. They now appeal the district court's refusal to invalidate their extraditions based on alleged violations of the doctrines of specialty, dual criminality and miscellaneous violations of Panama law. We affirm.
 
 I. Background
 
 2
 In June of 1980, Drug Enforcement Agency ("DEA") agents arrested a Chicago-area cocaine dealer, Craig Thompson. The DEA subsequently convinced Thompson to work undercover investigating his drug suppliers. Thompson identified his suppliers as William Quiceno De La Pava ("Quiceno") and Alfredo Munzo-Solarte ("Solarte"), both from Cali, Colombia. Over the course of the next year, with the assistance of Thompson, the DEA obtained enough evidence to request the Panamanian government to provisionally arrest Quiceno and Solarte. The request to provisionally arrest Quiceno and Solarte was based on their alleged distribution of 36 kilograms of cocaine in January of 1991. On March 21, 1991 the Panamanian police arrested Quiceno and Solarte. On May 7, 1991 Quiceno and Solarte were charged in a four count indictment. Count one charged them with conspiring to possess and distribute approximately 215 kilograms of cocaine in violation of 21 U.S.C. Sec. 846; count two charged Quiceno with distributing 95 kilograms of cocaine in June 1988, in violation of 21 U.S.C. Sec. 841(a)(1); count three charged Quiceno and Solarte with distributing 86 kilograms of cocaine in October of 1989 in violation of 21 U.S.C. Sec. 841(a)(1); and count four charged both defendants with distribution of 36 kilograms of cocaine in January of 1991, in violation of 21 U.S.C. Sec. 841(a)(1). Based on this four-count indictment, the United States government requested Panama to extradite Solarte and Quiceno. The Panamanian government agreed and its President ordered extradition on May 28, 1991.
 
 
 3
 Following their extradition, Quiceno and Solarte entered into a plea agreement in which they pleaded guilty to the conspiracy charged in count one of the indictment and the government dropped the remaining charges. In the plea agreement, the defendants also reserved their right to appeal the district court's order denying their pre-trial challenges to the lawfulness of their extraditions. They now appeal the lawfulness of their extraditions, specifically claiming that their extraditions violated the doctrines of specialty and dual criminality and that the Panamanian government violated Panama Law 34 in extraditing them to the United States. They assert that the United States lacked jurisdiction to prosecute them because of these violations.
 
 II. Analysis
 
 4
 The principle of specialty provides that a state requesting extradition of a defendant may only prosecute that defendant for those crimes specified in its extradition request. United States v. Rauscher, 119 U.S. 407, 430 (1886); United States v. Merit, 962 F.2d 917, 923 (9th Cir.1992); United States v. Lehder-Rivas, 955 F.2d 1510, 1519-20 (11th Cir.1992).[1] The doctrine of dual criminality provides that an accused person may only be extradited if the conduct complained of is considered criminal by the laws of both the requesting nation and the requested nation. Collins v. Loisel, 259 U.S. 309, 311 (1922).[2] Quiceno and Solarte claim that both of these doctrine were violated and, therefore, the United States lacks personal jurisdiction over them.
 
 
 5
 Even if their extraditions violated the doctrines of specialty and dual criminality, Quiceno and Solarte lack standing to object to these violations.
 
 
 6
 It is well established that individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereigns involved. Even where a treaty provides certain benefits for nationals of a particular state ... it is traditionally held that any rights arising from such provisions are, under international law, those of states and ... individual rights are only derivative through the states.
 
 
 7
 Treaties are designed to protect the sovereign interests of nations, and it is up to the offended nations to determine whether a violation of sovereign interests occurred and requires redress.
 
 
 8
 Matta-Ballesteros v. Henman, 896 F.2d 255, 259 (7th Cir.1990) (quotations and citations omitted).
 
 
 9
 Quiceno and Solarte make no claim that Panama has officially protested their extradition. Without an official protest, we cannot conclude that Panama objected to their extradition. Id. Neither defendant can therefore contest jurisdiction based on alleged violations of the international doctrines of specialty and dual criminality.[3]
 
 
 10
 Moreover, even if Quiceno and Solarte had standing to assert violations of the doctrines of specialty and dual criminality, these doctrines were not violated. Quiceno and Solarte assert that the specialty doctrine was violated because they were extradited solely for their distribution of 36 kilograms of cocaine in January of 1991 but prosecuted for the conspiracy charged in count one. Contrary to Quiceno and Solarte's claim, the United States requested the extradition of Quiceno and Solarte based on the May 7, 1991 indictment which included not only this distribution charge but the conspiracy charge in count one and the other two distribution charges. It was the request to provisionally arrest Quiceno and Solarte which involved only the January 1991 distribution. But the doctrine of specialty does not require a request for a provisional arrest to involve the identical charges for which a defendant is later tried.
 
 
 11
 Similarly, Quiceno and Solarte's argument that the doctrine of dual criminality was violated because Panama does not prohibit conspiracy, fails. Article 242 of the Panamanian penal code prohibits "association ilicita" and states: "When three of more people associate for the purpose of committing crimes, each one shall be sentenced, for that fact alone, to from 1 to 3 years in prison." Panama's prohibition of "association ilicita" satisfies the requirement for dual criminality.[4] See e.g., Collins, 259 U.S. at 312 ("The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions.").
 
 
 12
 Finally, Quiceno and Solarte claim that the district court lacked personal jurisdiction over them because Panama violated Law 23 of the Republic of Panama which sets forth the process by which the Panama government is to extradite criminals. Quiceno and Solarte contend that Law 23 is incorporated into the United States-Panama extradition treaty because the treaty provides that the extradition of fugitives shall be carried out "in conformity with the laws regulating extradition for the time being in force in the State in which the demand for surrender is made." They then reason that violations of Law 23 are violations of the United States-Panama treaty, and that a treaty violation therefore prohibited the United States from asserting jurisdiction over them. Again, as this circuit has clearly held in Matta-Ballesteros, absent an objection from the extraditing country, defendants lack standing to assert treaty violations.[5]
 
 
 13
 For the foregoing reasons, we affirm.
 
 
 
 [1]
 The United States/Panama extradition treaty expressly incorporates this principle: No person surrendered by either of the high contracting parties to the other shall, without his consent, freely granted and publicly declared by him, be triable or tried or be punished for any crime or offense committed prior to his extradition, other than that for which he was delivered up, until he shall have had an opportunity of returning to the country from which he was surrendered
 Article VIII of the Treaty Providing for the Extradition of Criminals, May 25, 1904, U.S.-Panama, 34 Stat. 2851.
 
 
 [2]
 The doctrine of dual criminality has been expressly incorporated into the United-States-Panama extradition treaty:
 The Government of the United States and the Government of the Republic of Panama mutually agree to deliver up persons who, having been charged with or convicted of any of the crimes and offenses specified in the following article, committed within the jurisdiction of one of the contracting parties, shall seek asylum or be found within the territories of the other: Provided, that this shall only be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charge shall be found, would justify his or her apprehension and commitment for trial if the crime of offense had been there committed.
 
 
 [34]
 Stat. 2851
 
 
 [3]
 Quiceno and Solarte cite cases from other circuits holding that defendants have standing to assert treaty violations. See Leighnor v. Turner, 884 F.2d 385, 388 (8th Cir.1989) (citing cases from the Fifth, Sixth, and Second Circuits holding that an individual lacks standing to assert the doctrine of specialty or allege violations of extradition treaties, and cases from the Eleventh and Ninth Circuits holding that an extradited individual has standing to assert violations of extradition treaties). This circuit, however, has held to the contrary in Matta-Ballesteros. Quiceno and Solarte also cite the Supreme Court decision of United States v. Rauscher, 119 U.S. 407 (1886). In Rauscher, the Supreme Court allowed a person, extradited pursuant to a treaty, to invoke the rule of specialty to avoid prosecution. Id. at 430. Rauscher, however, did not grant extradited criminals an absolute right to object to violations of international treaties. See United States v. Riviere, 924 F.2d 1289, 1298-1303 (3d Cir.1991). Therefore, contrary to Quiceno and Solarte's position, Matta-Ballesteros is not contrary to Rauscher. See Riviere, 924 F.2d at 1298-1303
 
 
 [4]
 In addition to Quiceno and Solarte, a third individual was charged in the indictment for conspiracy. (That individual remains a fugitive.) Thus Panama's requirement for three or more people is satisfied
 
 
 [5]
 Moreover, to consider Quiceno and Solarte's assertion would require this court to delve into the inner workings of the Panamanian government and its judicial system. " 'It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principle of comity upon which extradition is based.' " Sahagian v. United States, 864 F.2d 509, 514 (7th Cir.1988) (quoting Jhirad v. Ferrandina, 536 F.2d 478, 484-85 (2d Cir.1976))