UNITED STATES of America

v.

In the Matter of Extradition of James Gerard BARR A fugitive from the United Kingdom of Great Britain and Northern Ireland.

No. 84–0943.

United States District Court, E.D. Pennsylvania.

Aug. 25, 1985.

James A.A. Pabarue, Asst. U.S. Atty., Philadelphia, Pa., for the Government.

Daniel P. McElhatton, Philadelphia, Pa., for Barr.

## MEMORANDUM

NEWCOMER, District Judge.

This case poses a question rarely addressed in the context of an international request for extradition: whether the demanding country, through the United States government, has satisfied its burden of establishing that there is probable cause to believe James Gerard Barr committed attempted murder—the offense he is charged with in Northern Ireland.

For reasons described below, I conclude that this burden has not been met, and I will therefore deny the government's petition for extradition.

The government[1] submitted a brief with attached exhibits as the total evidence in support of the request for extradition. Respondent, James Gerard Barr, does not dispute the authenticity or admissibility of any of the government's papers. Mr. Barr did not submit any evidence on his behalf, nor request an evidentiary hearing in order to do so. Thus I am not faced with any evidentiary or procedural issues and this opinion relies on all of the submitted papers.[2]

James Gerard Barr is charged by the United Kingdom and Northern Ireland with the attempted murder of Marine Kevin Lee Harris, a British soldier.[3]

On July 14, 1981, at or about 7:10 p.m. a British military patrol was walking down the Falls Road in Belfast, Northern Ireland, when Marine Kevin Lee Harris was hit by bullets in the upper left arm and right thigh. The patrol consisted of five British soldiers, including Marine Harris. From the statements submitted, it appears that the gunmen shooting at the patrol were firing from the corner of Sevastopol Street and the Falls Road. Apparently none of the gunmen were hit. No other British soldier suffered any injuries. Marine Harris was treated at the Musgrave Park Hospital and subsequently released in good condition. Military personnel and police who searched the area recovered spent bullets, but did not discover any of the gunmen.

1. Pursuant to Article XIV of the Extradition Treaty between the United States and the United Kingdom, the United States government provides legal representation for the United Kingdom in United States courts, with reciprocal privileges extended to the United States when it seeks extradition of an individual in the United Kingdom courts. Hence, once the diplomatic note was sent *via* the British embassy to the United States Justice Department, an Assistant United States Attorney was assigned to the case.

2. "Respondent [Barr] does not challenge nor question the statements of the witnesses and

therefore all the statements in the Request for Extradition are deemed admitted." Respondent's Brief at 2.

3. Mr. Barr is also charged "with being a member of a proscribed organization although extradition is not being sought for this offense, which is not an extraditable crime under the Terms of the Treaty [between the United States and the United Kingdom]." *Statement Submitted on behalf of the British Embassy, Washington, D.C.,* September 20, 1984.

Almost two years later on June 3, 1983 one Henry Kirkpatrick pleaded guilty in a Belfast court to charges relating to the Harris shooting. Mr. Kirkpatrick gave a written statement on his and others' participation in the Harris shooting on August 18, 1983. A copy of that statement is included as an exhibit to the request for extradition. This statement constitutes the sole evidence I can glean from the submitted papers that even mentions Mr. Barr. Moreover the following comprises the entire evidence of any connection between the Harris shooting and Mr. Barr:

> In the meantime Jim Barr from Twinbrook who was a volunteer in the Andersontown Unit arrived in his car which was a Renault 5 green color. I told him we were going to have a go at the Brits. I also told him to scout around the top end of Clonard Street for any other foot patrols.[4]

Mr. Kirkpatrick does not state that Mr. Barr agreed to scout around, nor that Mr. Barr drove off in any direction. None of the statements of the British soldiers mentions Mr. Barr, nor in any way even suggest he was present during the attack.[5]

Section 3184 of Title 18 controls international extradition proceedings:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

■ The government has the burden of establishing four elements in order to sustain its burden in an extradition proceeding: (1) that there are criminal charges pending against Mr. Barr in Northern Ireland; (2) that the crimes with which Mr. Barr is charged are extraditable ones under the treaty between the United States and the United Kingdom and Northern Ireland; (3) that Mr. Barr is the individual actually sought by the authorities in Northern Ireland; and (4) that, based on the papers submitted by the government, there is probable cause to believe that the crime charged has been committed and that there is probable cause to believe that Mr. Barr committed the crime charged.[6]

---

4. Because Mr. Kirkpatrick's statement constitutes the sole mention of Mr. Barr I attach the statement as an appendix to this opinion.

5. Marine Commando Ian Mitchell saw a gunman at the corner of Sevastopol Street and the Falls Road. Mitchell described the gunman as "about 5'6" to 5'9" tall, black moustache wide and bushy, black curly hair quite long, wearing dark clothing and light colored training shoes." *Statement of Ian Mitchell, July 15, 1981.* Mr. Barr is 5'8" tall, clean cut, has a medium build, dark brown straight hair, blue eyes, and a "fresh complexion." Neither party addressed the identity of this gunman, since it is plain that Mr. Barr does not fit the description given by Mitchell.

6. Article IX(1) of the Treaty provides:

> Extradition shall be granted only if the evidence be found sufficient according to the law of the requested Party either to justify the committal for trial of the person sought if the offense of which he is accused had been committed in the territory of the requested Party or to prove that he is the identical person convicted by the courts of the requested Party.

Mr. Barr does not contest the first three elements. The papers reflect outstanding criminal charges against Mr. Barr in Northern Ireland for the attempted murder of Marine Harris. The United States and United Kingdom of Great Britain and Northern Ireland Extradition Treaty, at Article III(1) and Schedule III(1), TIAS 8468, includes attempted murder as an extraditable offense. Third, Mr. Barr does not contest that he is the person sought.

Turning to the last element, respondent concedes that there is probable cause to believe the crime charged was .committed. However, his counsel argues that the evidence is insufficient to sustain the government's burden of showing there is probable cause to believe that Mr. Barr committed the crime charged.

■ In extradition proceedings, probable cause is measured by the federal standard used in preliminary proceedings. *See Sindona v. Grant,* 619 F.2d 167 (2d Cir.1980).

> Probable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.

*Coleman v. Burnett,* 477 F.2d 1187, 1202 (D.C.Cir.1973). · A review of the documents submitted leads me to conclude that there is no probable cause to believe Mr. Barr attempted to murder Marine Harris.

Under the law of Northern Ireland, murder is a common law offense. It is committed when "a person of sound memory and discretion unlawfully killeth any reasonable creature in being and under the King's peace, with malice aforethought, either express or implied, the death following within one year and a day." *Statement of Vincent Paul Lynagh, Solicitor in Northern Ireland* at 1 (*quoting* Sir Edward Coke: "Institutes of the Laws of England" (1952)).

The relevant common law also establishes that an attempt to commit murder is punishable.

> To prove an attempt to commit an offence it is necessary to prove that some

act was done by the defendant which must be immediately and directly connected with the offence ... "[T]he actus reus (Act) necessary to constitute an attempt is complete if the prisoner does an act which is a step towards the commission of a specific crime, which is immediately and not merely remotely connected with the commission of it, and the doing of which cannot reasonably be regarded as having any other purpose than the commission of the specific crime."

*Id.* at 1–2 (*quoting* Archbold: "Pleading, Evidence and Practice in Criminal Cases," 41st Ed. (1982)).

■ As related above, the evidence submitted does not mention or suggest any *act* by Mr. Barr. All Mr. Kirkpatrick states is that he requested Mr. Barr "scout around" the area. There is no evidence of any agreement by Mr. Barr to undertake any act, and certainly not one which a reasonable person could construe as "immediately and not merely remotely connected with the commission of [a specific crime]." Respondent claims that the government's evidence amounts to charges based on "mere presence" in the vicinity. I agree with this statement. A reasonable person could not find that probable cause exists to believe Mr. Barr committed the crime of attempted murder, based on such scanty evidence.

> "Probable cause means more than opportunity to commit crime or presence in a particular place. It must be more than surmise or suspicion. There must be some tangible fact or incident which will support a judicial act, something which invokes discrimination of judicial discretion."

*Reis v. United States Marshal,* 192 F.Supp. 79, 82 (E.D.Pa.1961) (*quoting United States v. Johnston,* 292 F. 491, 493 (D.Wash.1923)).

I conclude that, based on the evidence presented, the government has shown only that Mr. Barr was present in the vicinity of the attack and nothing more. Thus, I am compelled to deny the government's extra-

dition petition for lack of probable cause. will be dismissed. An appropriate order *Article IX(1) of the Treaty.* The petition follows.

APPENDIX

STATEMENT OF <u>HENRY KIRKPATRICK</u>.
AGE OF WITNESS (if over 21 enter "over 21") <u>OVER 21</u>
OCCUPATION OF WITNESS <u>UNEMPLOYED LABOURER</u>
ADDRESS <u>12 ST. BRENDAN'S WALK, BELFAST.</u>

I declare that this statement consisting of two pages, each signed by me is true to the best of my knowledge and belief and I make it knowing that, if it is tendered in evidence at a preliminary enquiry or at the trial of any person, I shall be liable to prosecution if I have wilfully stated in it anything which I know to be false or do not believe to be true.

Dated this 18 day of August 1983

*SIGNATURE OF MEMBER by whom statement was recorded or received.*          *SIGNATURE OF WITNESS*

I was involved in the shooting of a soldier on the Falls Road near Sevastopol Street, during the summer of 1981 on a good bright sunny day. The Marine Commandos had just moved in to Belfast and we were going to take them on because they were a new regiment. The job was done by the Belfast Brigade INLA and all those who took part were members. The job was done during the day and a soldier was hit on the arm. He was a member of a foot patrol outside the Social Security offices. Myself, Gerard Steenson, who was the Operations Officer, Paddy McAreavy who was OC INLA Lower Falls, Bobby Tohill from Dunlewey Street who was a Volunteer, Gerard Barkley, Rockville Street, who was also a Volunteer, were standing at the corner of Dunlewey Street on the Falls Road. We spotted an Army foot patrol heading towards North Howard Street Army Camp. We decided on the spur of the moment to have a go at them. Paddy McAreavy and Gerard Barkley hijacked a car in Bombay Street. It was a yellow Toyota, four door which I knew to be a taxi from Blue Star Taxi on the Donegall Road. This car had just recently been resprayed. They arrived down to Dunlewey Street with a Ruger rifle and a .32 Vzor hand gun. In the meantime Jim Barr from Twinbrook who was a Volunteer in the Andersonstown Unit arrived in his car which was a Renault 5 green colour. I told him we were going to have a go at the Brits. I also told him to scout around the top end of Clonard Street for any other foot patrols. Me and Barkley got into my car, a white Datsun Estate, and scouted the hijacked car around to Sevastopol Street. McAreavy had put the guns into the hijacked car and he and Gerard Steenson got in it. Both cars did a U turn in Sevastopol Street and stopped. McAreavy and Steenson got out of the car with the guns. Steenson had the rifle and McAreavy had a .32 Vzor. They walked up to the corner of the Falls Road and I saw Steenson aim the Ruger rifle in the direction of the Social Security Offices. He opened fire and I heard between one and four shots. He then moved back and I saw McAreavy move out to the corner and fire about 2–3 rounds in the same direction. They then ran back to the hijacked car. I got out of my car and watched what was happening. Barkley stayed in my car. I then got back into my car and the two cars drove up towards Clonard Street. I went in one direction and the other car went towards Bombay Street. I heard later that one of the Marines had been hit in the arm. I was later stopped in my car in Theodore Street by a mobile patrol of marines. I was on my own at the time.