**UNITED STATES of America**

v.

**Eduardo MARTINEZ, et al.**

**Crim. No. 1:89–cr–086–WCO.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 22, 1991.

---

**1032**

Wilmer Parker, III, Asst. U.S. Atty., Washington, D.C., for the U.S.

Edward T.M. Garland, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

O'KELLEY, Chief Judge.

Following the entry of a plea of guilty by the defendant Eduardo Martinez,[1] this court indicated, in an order dated August 23, 1990, that it had orally denied the defendant's motion to dismiss the indictment for lack of personal jurisdiction. Although no explanation was given for this denial at that time, the court stated that it would elaborate upon the reasons for its decision in a forthcoming memorandum opinion. That opinion is set forth below.

### Factual Background

On September 14, 1979, the United States and the Republic of Colombia terminated all of their prior extradition treaties with one another by entering into a new treaty ("Extradition Treaty"). This treaty sets forth, among other things, the crimes for which extradition is permissible, as well as the procedure by which extradition must be accomplished.

The United States Congress ratified the Extradition Treaty on March 4, 1982, and Colombia did likewise through the passage of Law No. 27 of 1980. The Colombian law was declared unconstitutional, however, by Colombia's Supreme Court of Justice in

---

**1.** The defendant pleaded guilty to both counts contained in the indictment—(1) "aiding and abetting others by and through the laundering of monies derived from the sale of cocaine ...," 21 U.S.C. § 846, 18 U.S.C. § 2; and (2) "conspiring with others to defraud the United States by impeding, impairing, obstructing, and defeating the Internal Revenue Service in its ... governmental function of collecting income taxes ...," 18 U.S.C. §§ 371, 1952, 1956. Transcript of Plea Proceedings, pp. 2–9.

December of 1986. The court found that the bill approved by the Colombian Congress had been signed by a minister rather than the president himself, and accordingly found that this constituted an unconstitutional delegation of authority. On December 14, 1986, in response to the court's decision, the Colombian Government sought to revive Law No. 27 through the passage of Law No. 68. As with Law No. 27, however, it too was declared unconstitutional.

As a result of the Colombian Supreme Court's decisions, the Extradition Treaty is not domestically binding on Colombia, as it is upon the United States. Nonetheless, it appears that neither party has terminated or in any way disavowed the treaty, and hence, it remains in force under principles of international law. *See* Vienna Convention on the Law of Treaties, U.N.Doc. A/CONF. 39/27, Arts. 27, 46 (1969) (entered into force on January 27, 1980).[2]

On August 18, 1989, pursuant to an earlier declaration of martial law, the president of Colombia issued Decree No. 1860, the relevant portion of which provides:

> ARTICLE 1: *The force and effect of Subsection 2, Article 17 of the Criminal Code, shall be suspended with regard to everything related to narcotics trafficking and related crimes, for as long as public order is disturbed and the national territory remains under martial law;* and consequently, for purposes of the extradition of Colombian citizens and foreign nationals requested for these crimes, the procedures stipulated in the Code of Criminal Procedure may be applied, with the modifications that the present decree herein stipulates.

Defendant's Exhibit D (emphasis added). Article 17, Subsection 2 states that "[t]he extradition of Colombians shall be subject to the provisions of public treaties." Criminal Code of Colombia, Art. 17 (Defendant's Exhibit "E") (as translated in Defendant's Motion to Dismiss, p. 10).

Later in August of 1989, the United States Embassy issued Verbal Note No. 632 requesting the detention and extradition of the defendant by Colombian authorities. This request, which was made pursuant to the Colombian president's decree rather than the Extradition Treaty, was granted the following day.

The defendant subsequently filed an administrative appeal alleging that extradition pursuant to the decree was unconstitutional, given the existence of the Extradition Treaty between the United States and Colombia. The Minister of Communications denied the appeal, and the defendant filed a petition with the Colombian Supreme Court asserting the same argument. He was extradited to the United States, however, before the court had an opportunity to issue a decision.

This case is now before the court on the defendant's motion to dismiss his indictment for a lack of personal jurisdiction pursuant to Rules 12(b)(1) and (2) of the Federal Rules of Civil Procedure.

### Introduction

In support of his motion to dismiss, the defendant basically alleges that this court lacks personal jurisdiction over him because the government brought him to the United States in violation of the Extradition Treaty between Colombia and the United States. Specifically, he claims that his extradition was illegal because it was carried out under Decree No. 1860, rather than the existing Extradition Treaty. And because his extradition was illegal, he argues, this court possesses no jurisdiction over him, and therefore, the indictment must be dismissed.

---

**2.** These articles provide as follows:

ARTICLE 27

A party may not invoke the provisions of its internal law as justification for its failure to perform a treaty....

   \*    \*    \*    \*    \*    \*

ARTICLE 46

1. A State may not invoke the fact that its consent to be bound by a treaty has been expressed in violation of a provision of its internal law regarding competence to conclude treaties as invalidating its consent unless that violation was manifest and concerned a rule of its internal law of fundamental importance....

Vienna Convention on the Law of Treaties, U.N. Doc. A/CONF. 39/27, Arts. 27, 46 (1969) (entered into force on January 27, 1980).

According to the defendant, the Colombian Supreme Court found that Decree No. 1860 "could be utilized to extradite Colombian nationals but *if and only if* no extradition treaty exists between Colombia and the requesting country." Defendant's Motion to Dismiss, p. 11 (emphasis in original). This is so, the defendant claims, because the decree only deleted a portion of Article 17 of the Criminal Code. The supreme court apparently found that the remaining language supports the conclusion that the decree applies *only* in the absence of an extradition treaty.[3] Since the Extradition Treaty between the United States and Colombia has not been terminated and thus is still in force, the defendant argues that under the supreme court's ruling, he should have been extradited pursuant to that treaty rather than the decree.

First, irrespective of the merits of the defendant's argument, the court finds that he does not possess standing to challenge an alleged violation of the Extradition Treaty. Furthermore, even if it is assumed that the defendant has standing, it is clear that his arguments have no substantive merit. Specifically, whether or not the Colombian court's interpretation is correct is of little concern to this court, as that decision is only binding domestically. Although the defendant's extradition may not have been technically correct under colombian law, that fact in no way effects this court's jurisdiction over the defendant. It is apparent that the defendant was extradited from Colombia with the full consent and cooperation of the Colombian Government. Extradition carried out under such circumstances does not offend principles of international law, and certainly does not violate the law of the United States.

Moreover, the court notes that because the *Ker–Frisbie* doctrine would have per-mitted the forcible abduction of the defendant, it logically follows that a voluntary rendition of the defendant is likewise an acceptable mode of extradition.

### Discussion

#### A. *Standing*

■ It goes without saying that extradition treaties are made for the benefit of the nations that are parties thereto. *See* I. Brownlie, *Principles of Public International Law*, 307 (2d ed. 1973). Therefore, as many courts have held, "it is the contracting foreign government, not the defendant, that would have the right to complain about a violation." *United States v. Cordero*, 668 F.2d 32, 38 (1st Cir.1981); *see also United States v. Rosenthal*, 793 F.2d 1214, 1232 (11th Cir.), *modified in part*, 801 F.2d 378 (1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987); *United States v. Valot*, 625 F.2d 308 (9th Cir.1980) (in response to assertion that abduction violated extradition treaty, held that individuals' rights are only derivative through states, even when a treaty provides certain benefits for nationals); *United States ex rel. Lujan v. Gengler*, 510 F.2d 62, 67 (2d Cir.), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975). As a result, absent any objection or protest by the foreign government, an individual has no standing to assert a treaty violation. *See Matta–Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 209, 112 L.Ed.2d 169 (1990) (held that "[i]t is well established that individuals have no standing to challenge violations of international treaties in the absence of a protest by the sovereign involved"); *United States v. Reed*, 639 F.2d 896, 902 (2d Cir.1981) ("absent protest or objection by the offended sovereign, [de-

---

**3.** The remainder of Article 17 provides that:
Extradition shall be requested, granted or offered in accordance with public treaties. In the absence thereof, the Government shall request, offer or grant, extradition according to what is established in the Code of Criminal Procedure.

    \*    \*    \*    \*    \*    \*

In no event shall Colombia offer the extradition of [its] nationals, nor shall the extradi-tion be granted of individuals indicted for or convicted of political crimes.

Criminal Code of Colombia, Art. 17 (Defendant's Exhibit "E") (as translated in Defendant's Motion to Dismiss, p. 10).

fendant had] no standing to raise violation of international law issue").

■ The Colombian Government has clearly interposed no objection or protest with regard to the defendant's extradition. Consequently, the court holds that, as an individual, the defendant possesses no standing to assert that his extradition violated the Extradition Treaty. Nevertheless, the court will proceed to examine the substantive merits of the defendant's arguments.

### B. *Effect of Colombian Supreme Court's Decision on this Court's Jurisdiction*

■ Although the Colombian Supreme Court may have been correct in concluding that under Decree No. 1860, extradition must proceed under an extradition treaty if one exists, this court has been unable to locate a similar requirement under principles of international law. Respect for the sovereignty of other nations is undeniably an important principle recognized under international law. Indeed, an extradition treaty is a mechanism specifically designed to ensure compliance with this principle. *See* 1 M. Bassiouni, *International Extradition: United States Law & Practice*, ch. 3, § 2, p. 194 (2d ed. 1987) (Extradition treaties "[are] designed to protect the sovereignty and territorial integrity of states, and to restrict impermissible state conduct."); *see also United States v. Rauscher*, 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886). So long as this respect for the sovereignty of other nations is not offended, the court can envision no reason why two countries cannot agree to extradition without proceeding under the specific dictates of the treaty itself.

■ The defendant also argues that in *United States v. Rauscher* the Supreme Court established that "when an extradition treaty exists, extradition processes established by that treaty must be followed." Defendant's Motion to Dismiss, p. 16. *Rauscher* stands for no such proposition. The Supreme Court simply held that an extradited defendant may not be tried in the United States for any crime other than that for which he was extradited.[4] 119 U.S. at 424, 7 S.Ct. at 243. Specifically, the Court ruled that the defendant in *Rauscher* should not have been tried for the infliction of cruel and unusual punishment, a crime for which extradition was not permitted in the treaty between the United States and Great Britain, when he had been extradited on a charge of murder.

The defendant also cites several other cases which he claims establish that "if a foreign national is brought to the United States by or at the behest of officials of the United States *in violation of a treaty*, United States courts must nonetheless enforce the treaty, despite *Ker*."[5] Defendant's Motion to Dismiss, p. 21 (emphasis in original). *See Johnson v. Browne*, 205 U.S. 309, 27 S.Ct. 539, 51 L.Ed. 816 (1907) (in affirming circuit court's decision granting writ of habeas corpus, Court held that treaties should not be construed in such a way as to obtain the extradition of an individual for one offense and punish him for another); *Ford v. United States*, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927) (held *Rauscher* inapplicable because the defendants were only tried for and convicted of the charges which provided the basis for the seizure of their vessel pursuant to the treaty of May 22, 1924 between the United States and Great Britain); *Cook v. United States*, 288 U.S. 102, 53 S.Ct. 305, 77 L.Ed. 641 (1933) (held that "libels" were properly dismissed because the seizure of the vessel in question violated the treaty of May 22, 1924 between the United States and Great Britain). This assertion obviously raises once again, at least by implication, the de-

---

**4.** This is commonly known as the "rule of specialty." It appears that the defendant may be attempting to raise a "specialty" argument as well. Such an argument, however, is clearly without merit because the defendant has been indicted on the same charges for which he was extradited.

**5.** *Ker* refers to *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886), a case that will be discussed in the next section in connection with the *Ker–Frisbie* doctrine.

fendant's argument that when an extradition treaty exists, it must be followed.

■ The court simply cannot accept the defendant's contention. Rather, the court interprets *Rauscher* and the other cases as standing for the proposition that when an extradition treaty is in force between the United States and another nation, and extradition is sought under that treaty, the United States is required to abide by the procedures and requirements set forth therein.

■ Indeed, the court notes that the Ninth and First Circuits have held that, unless otherwise provided, an extradition treaty in no way limits a nation's discretion to surrender a fugitive. *See United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir.), *cert. denied*, 479 U.S. 1009, 107 S.Ct. 652, 93 L.Ed.2d 707 (1986); *United States v. Cordero*, 668 F.2d 32, 37–38 (1st Cir.1981). The court in *Cordero* noted that: "[e]xtradition treaties normally consist of commitments between governments to the effect that each *will return* those accused of certain crimes at the request of the other." 668 F.2d at 37. The First Circuit went on to observe that

> [n]othing in the treaty prevents a sovereign nation from deporting foreign nationals for other reasons and in other ways should it wish to do so.... To hold that extradition treaties *forbid* foreign nations to return criminal defendants except in accordance with the formal procedures they contain, would insofar as we are aware, represent a novel interpretation of those treaties. Under such an interpretation, extradition trea-

ties would hinder rather than help serve, the return of those accused of crimes within American jurisdiction.

*Id.* at 37–38 (emphasis in original).

■ In the captioned case, the president of Colombia issued a specific decree under which he considered it permissible to extradite the defendant without proceeding directly under the Extradition Treaty. The United States in no way sought to circumvent or violate the existing treaty; it simply made a request for extradition pursuant to the decree which it considered to govern under the circumstances, and that request was granted. In addition, the court notes that as with the treaty in *Cordero*, nothing contained in the treaty between the United States and Colombia prevents either nation from surrendering its nationals should it wish to do so. As a result, it cannot seriously be argued that the United States actions in this case in any way violated Colombia's sovereignty.[6]

■ The court further notes that under the law of the United States, an American court will not inquire behind an extradition request to determine whether the person whose extradition is sought will be treated fairly by the requesting nation—the so-called "rule of non-inquiry." *See In re Extradition of Manzi*, 888 F.2d 204, 206 (1st Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990). Such inquiry is appropriately reserved for the executive branch of the government because of its exclusive authority to conduct foreign affairs. *See id.; see also Escobedo v. United States*, 623 F.2d 1098, 1105 (5th Cir.), *cert. denied*, 449 U.S. 1036,

---

**6.** For some reason, the defendant also relies on *Fiocconi v. Attorney General*, 462 F.2d 475 (2d Cir.), *cert. denied*, 409 U.S. 1059, 93 S.Ct. 552, 34 L.Ed.2d 511 (1972). In *Fiocconi*, the government of Italy extradited the defendants to the United States for narcotics offenses as a matter of comity, even though these were not extraditable offenses under the extradition treaty between the two nations. The defendants apparently were prosecuted and convicted in New York of narcotics charges other than those for which they were originally extradited, and hence they argued, under the "rule of specialty," that they should not have been prosecuted. The court held that the "rule of specialty" applies

when a an individual is extradited as a matter of comity, just as it applies when he is extradited pursuant to a formal treaty. Although the court found a technical violation of the "rule of specialty," it declined to overturn the defendants' convictions because the Italian Government had not objected, nor did it seem that it would have had any real reason to object. *See id.* at 481.

The relevance of *Fiocconi* to the defendant's situation escapes the court. If anything, this case supports the notion that even when an extradition treaty exists, the nations involved are not necessarily required to carry out extradition pursuant to it, contrary to what the defendant has argued to this court.

101 S.Ct. 612, 66 L.Ed.2d 497 (1980). Similarly, it would appear that courts of the United States should likewise not inquire into the motives behind or the domestic legality of another nation's decision to extradite one of its nationals. Such a situation may present an issue for that nation's government to address, but it is irrelevant with regard to this court's jurisdiction over an extradited defendant.

Consequently, this court holds that the extradition of the defendant under Decree No. 1860 instead of the Extradition Treaty, in apparent violation of the Colombian Supreme Court's interpretation of the decree, does not make that extradition illegal under international law or the laws of the United States, at least not as related to this court's jurisdiction. Accordingly, the court holds that the method used to extradite the defendant does not serve to divest the court of personal jurisdiction over him.

### B. The Ker–Frisbie Doctrine

The former Fifth Circuit has interpreted the Ker–Frisbie [7] doctrine to stand for the proposition that:

> a defendant in a federal criminal trial, whether citizen or alien, whether arrested within or beyond the territory of the United States, may not successfully challenge the District Court's jurisdiction over his person on the grounds that his presence before the court was unlawfully secured.

**7.** This doctrine takes its name from the two cases which established it—Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886), and Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541, reh'g denied, 343 U.S. 937, 72 S.Ct. 768, 96 L.Ed. 1344 (1952). In Ker, the defendant challenged his conviction for larceny by an Illinois state court based upon the fact that he was forcibly abducted from Peru against his will and in violation of the United States extradition treaty with Peru. The defendant in Frisbie petitioned for a writ of habeas corpus alleging that his forcible seizure from his Chicago home by Michigan officers violated his due process rights under the fourteenth amendment. In each case, the Court held that the methods employed to bring the defendants into court did not invalidate the convictions.

**8.** The Second and Ninth Circuits have recognized an exception to Ker–Frisbie. See United

United States v. Winter, 509 F.2d 975, 987–88 (5th Cir.), cert. denied, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975).[8] The defendant asserts that this doctrine is inapplicable to the captioned case because an extradition treaty exists between the United States and Colombia. As indicated previously, the defendant alleges that Rauscher, Johnson, Browne, Ford, and Cook establish that when an extradition treaty exists it must be followed. Although it has already held that the defendant's interpretation of these cases is incorrect, the court is compelled, nonetheless, to note that the distinction drawn by the defendant between his case, as well as the others upon which he relies, and Ker v. Illinois is actually one without a difference.

The defendant correctly observes that a treaty was not involved in Ker. He fails to acknowledge, however, that a treaty did in fact exist between the United States and Peru in that case, the provisions of which simply were never invoked because extradition was not carried out pursuant to that treaty—the defendant was forcibly abducted from Peru.

In each of the cases upon which the defendant relies, the courts respectively found that the relevant extradition treaty under which the United States was proceeding had been violated, and therefore that the trial courts in those cases lacked personal jurisdiction over the defendants before them. The difference between

States v. Toscanino, 500 F.2d 267 (2d Cir.), reh'g denied, 504 F.2d 1380 (1974); United States ex rel. Lujan v. Gengler, 510 F.2d 62 (2d Cir.), cert. denied, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975); United States v. Lovato, 520 F.2d 1270 (9th Cir.), cert. denied, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975); United States v. Valot, 625 F.2d 308 (9th Cir.1980). According to these decisions, Ker–Frisbie is inapplicable if a defendant can make a "strong showing of grossly cruel and unusual barbarities inflicted upon him by persons who can be characterized as paid agents of the United States." Lovato, 520 F.2d at 1271.

The Eleventh Circuit has declined to recognize this exception. See United States v. Darby, 744 F.2d 1508 (11th Cir.), reh'g denied, 749 F.2d 733 (1984), cert. denied, 471 U.S. 1100, 105 S.Ct. 2322, 85 L.Ed.2d 841 (1985) (court noted, however, that it has not ruled out the possibility of a narrow exception to the Ker–Frisbie doctrine).

those cases and the captioned case is that in this case, like *Ker*, the government did not seek the extradition of the defendant pursuant to the Extradition Treaty, but instead, made a request for extradition under then valid Colombian law—Decree No. 1860, a request which was granted without any apparent objection by the Colombian Government. In this court's opinion, such an amiable extradition is certainly lawful, particularly given the fact that extradition accomplished by means of forcible abduction has consistently been held valid by United States courts.

### Conclusion

For the reasons set forth, the court holds that the defendant lacks standing to challenge the validity of his extradition, and that even ignoring this fact, his arguments nevertheless possess no merit. Accordingly, the defendant's motion to dismiss his indictment for a lack of personal jurisdiction has been denied.

IT IS SO ORDERED.